IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SETH W. o/b/o N.D. (a minor), | |
| Claimant, | |
| v. | No. 21 C 37 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | Magistrate Judge Jeffrey T. Gilbert |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Seth W.[1] ("Claimant") seeks review of the final decision of Kilolo Kijakazi,[2] Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application on behalf of N.D., a minor, for supplemental security income pursuant to section 1614(a)(3)(C) of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. § 405(g). Claimant filed a Memorandum In Support of Summary Remand [ECF No. 20], which the Court construes as a motion, and the Commissioner filed a Motion for Summary

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using the first name and first initial of the last name.

[2] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Judgment [ECF No. 25]. This matter is fully briefed and ripe for decision. *See* [ECF Nos. 20. 25, 26, 27].

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum In Support of Summary Remand [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 25] is denied. The case is remanded to the Social Security Administration for further proceedings.

## STANDARD OF REVIEW

Children are considered disabled under the Social Security Act if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any "substantial gainful activity" (20 C.F.R. § 416.924(b)); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe" (20 C.F.R. § 416.924(c)); and (3) those impairment(s) must meet, medically equal, or functionally equal the severity one of the "listings" in the Social Security regulations (20 C.F.R. § 416.924(d)). *See McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021) (observing that because the disability analysis for children is not work-focused, officials instead ask "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them").

If an impairment does not meet or medically equal a listing, the ALJ considers six "domains" of functioning to evaluate whether an impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). These domains are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* To functionally equal a listing, the impairment must produce a "marked" limitation in at least two domains of functioning or an "extreme" limitation in one domain. *Id.* at § 416.926a(d). The ALJ must consider the combined effect of all medically determinable impairments, even if a given impairment is not, on its own, severe. *Id.* at §§ 416.923, 416.924a(b)(4), 416.926a(a), and 416.926a(c). If a child meets the above requirements—in other words, does not engage in substantial gainful activity and has a severe impairment that meets, medically equals, or functionally equals a listing—the child will be found disabled. *Id.* at § 416.924.

On judicial review, the court will affirm an ALJ's decision "if the correct legal standards were applied and supported with substantial evidence." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (internal quotation marks omitted). The evidence supporting an ALJ's decision "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In determining whether there is substantial evidence, the

court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). But a court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment" for the ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation and brackets omitted).

The ALJ must explain her decision "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, an ALJ must "identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (internal citation omitted). The ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995), but "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). While a reviewing court gives substantial deference to the ALJ's decision, it must operate as "more than merely [a] rubber stamp." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). If the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## PROCEDURAL HISTORY

On June 7, 2018, Claimant, as N.D.'s guardian and grandfather, filed an application for supplemental security income on behalf of N.D., alleging a disability onset date of May 5, 2012. (R.13). That application was denied initially on December 6, 2018, and again on reconsideration on April 12, 2019, after which Claimant

4

requested a hearing before an administrative law judge ("ALJ"). (R.13). On January 30, 2020, Claimant and N.D. appeared and testified at a hearing before ALJ Janet Akers. (R.13). At the hearing, Claimant was represented by counsel. (R.13).

On March 4, 2020, the ALJ issued her decision denying Claimant's application for supplemental security income. (R.13-20). The ALJ followed the three-step evaluation process required by the Social Security Regulations to determine if a child is disabled. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ determined that N.D. was an adolescent on June 7, 2018, the date the application was filed, and that he had not engaged in substantial gainful activity since his application was filed. (R.14). At step two, the ALJ concluded that N.D. has the following severe impairments: disruptive mood dysregulation disorder, unspecified learning disorder, unspecified depressive disorder, specific learning/intellectual disorder, and speech or language delay. (R.14). At step three, the ALJ concluded that N.D. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). (R.14). The ALJ further concluded that N.D. does not have an impairment or combination of impairments that functionally equals the severity of a listing. (R.16). Therefore, the ALJ found N.D. has not been under a disability, as defined in the Social Security Act, since June 7, 2018, the date his application was filed. (R.20).

The Appeals Council declined to review the matter on July 6, 2020, making the ALJ's decision the final decision of the Commissioner. (R.1-6). Therefore, this Court

now has jurisdiction to review this matter. 42 U.S.C. § 405(g); *Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## ANALYSIS

Claimant argues that the ALJ's decision is not supported by substantial evidence because she did not explain how she weighed evidence relevant to the severity of N.D.'s functioning in the domains of acquiring and using information and caring for yourself. When evaluating whether a child's impairments functionally equal a listing, the regulations require the ALJ to "assess the interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments" which are not severe. 20 C.F.R. § 416.926a(a). The "whole child" approach promulgated in the Commissioner's rulings emphasizes accounting for the interactive and cumulative effects of all of the child's impairments. *See* SSR 09-1p, 2009 WL 396031, at *3; *Dent ex rel. K.V. v. Colvin*, 2013 WL 1500824, at *9-10 (C.D. Ill. Apr. 9, 2013). The ALJ is required to "to consider all relevant evidence" in the record. 20 C.F.R. §416.924(a). The Seventh Circuit has held that in assessing disability claims "the ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001), citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Accordingly, "meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Brider v. Apfel*, 18 F. Supp. 2d 900, 904-05 (N.D. Ill. 1998), citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

The ALJ concluded that N.D has a "less then marked limitation" in the domains of acquiring and using information and caring for yourself. (R.16). In reaching her conclusion, the ALJ noted N.D.'s IQ scores, need for one-on-one support for reading and spelling, and need for "'significant support' for self-management and emotional regulation." (R.18). The ALJ, however, downplayed some of these facts in her opinion and did not acknowledge or discuss other evidence in the record that the Court finds relevant.

As to the domain of acquiring and using information, nowhere in her decision did the ALJ acknowledge the fact that N.D.'s reading, writing, and math levels are well below his same-aged peers. The evidence shows that when N.D. was in the seventh grade, his reading, sentence composition, and oral expression were at the first-grade level, and he was spelling at the kindergarten level. (R.378-79). His math skills were mostly in the first-grade level while his math fluency scores were his highest, but they only reached the lowest percentile of fourth-grade students. (R.379). The record shows that despite extensive intervention and support, N.D.'s abilities had not improved much by his freshman year of high school when his teacher rated him at the first-grade level of reading and the third-grade level of math. (R.358).

In the Court's view, these reading, writing, and math scores are significant and N.D.'s deficits in these areas speak directly to the Commissioner's examples of limitations in this domain of functioning. *See* SSR 09-3p, 2009 WL 396025, at *6. Similarly, N.D.'s lack of ability in these areas contrast sharply with the Commissioner's examples of what a school-age child, let alone an adolescent, should

7

be capable of. *See* SSR 09-3p, 2009 WL 396025, at *5-6. The ALJ offers some explanation that "it is unclear the extent to which [N.D.'s] impairments affect his grades" because he testified to playing videogames all night and his eighth grade teacher opined that he only has a slight problem learning new material, recalling and applying previously learned material, carrying out multi-step instructions, refocusing to task, and working at a reasonable pace. (R.19). It is not clear to the Court how or why Claimant playing video games has any impact on his ability to learn and apply his reading, writing, and math skills.

The Court also is concerned that the ALJ did not discuss the findings of the medical expert in connection with N.D.'s prior claim, which was denied by an ALJ in 2018. (R.98-121). In N.D.'s prior claim, Larry Kravitz, Psy.D., testified as a medical expert and opined that N.D. had a "marked" limitation in the domain of acquiring and using information because, among other reasons N.D.'s then "most recent teacher evaluation ha[d] him something like four grades below grade level" academically. (R.92). Consistent with the expert's opinion, the prior ALJ found that N.D. had a "marked" limitation in the domain of acquiring and using information. (R.110). By the time N.D. reached high school, the record shows that his reading and math skills were eight and six years below grade level, respectively. (R.358). The ALJ failed to even mention these facts, let alone explain how and why she came to a different conclusion that N.D. does not have a "marked" limitation in the domain of acquiring and using information.

The Court cannot assume or speculate what the ALJ was thinking. The ALJ must provide a sufficient explanation as to what evidence she considered, how she weighed that evidence and why she made the findings she made. None of that explanation was provided in this case. The Commissioner contends that Dr. Kravitz's opinion is irrelevant solely because the testimony was given in relation to a prior claim. Commissioner's Brief [ECF No. 26], at 5. The ALJ, however, did not provide that explanation. That is the Commissioner's after the fact argument. The ALJ did not even acknowledge the existence of Dr. Kravitz's prior testimony, and the Commissioner's attempt to minimize the probative value of Dr. Kravitz's opinion is barred by the *Chenery* doctrine. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943), *Stewart v. Astrue*, 561 F.3d 679,684 (7th Cir. 2009) (agency lawyers are forbidden from defending agency decisions on grounds that the agency itself did not embrace). Further, that Dr. Kravitz's prior testimony was given in a prior proceeding involving N.D. is a relevant but not dispositive fact. It would have been important to know what, if any, weight the ALJ gave to the prior testimony and her rationale for doing so. It is troubling that the record is silent in that regard.

As to the domain of caring for yourself, the ALJ noted that N.D. had minimal participation or engagement in therapy and that his medication was not fully effective throughout the day. (R.18). The ALJ further noted that N.D.'s IEP indicated that he requires "significant support" for self-management and emotional regulation, which "highly" impacts his day, and it also suggested that N.D.'s "teachers should take [his] emotional regulation difficulties into consideration when implementing

9

intervention and support." (R.18). It is unclear to the Court what evidence the ALJ relied upon to conclude that N.D has "no more than a less than marked limitation" in his ability to care for himself. (R.19). In the Court's view, the evidence discussed by the ALJ relates more to N.D.'s ability to acquire and use information and to attend to and complete tasks. Again, the Court cannot assume or speculate what the ALJ was thinking. The ALJ must provide a sufficient explanation as to what evidence she considered, how she weighed that evidence, and why she made the findings she made. For the domain of caring for yourself, the Court finds that the ALJ's explanation is deficient. Therefore, the Court finds that remand is required for further explanation.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In the Court's view, the ALJ's lack of discussion and explanation about the findings of the medical expert in connection with N.D.'s prior claim and her failure to acknowledge N.D.'s significant deficits in reading, writing, and math skills requires remand. This does not mean the Court agrees with Claimant that N.D. is disabled and entitled to benefits within the meaning of the applicable law. In fact, that may not be the case, but it also is irrelevant for purposes of this appellate review. Rather, it means that the ALJ did not address certain evidence in the record and without knowing the ALJ considered that evidence and the reasons why she did not find it relevant or persuasive, the Court is not able to conclude at this time that the ALJ's

decision is supported by substantial evidence under the controlling standard of review.

The Court expresses no opinion about the decision to be made on remand but encourages the ALJ to explain why she rejected certain contrary evidence in the record and build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

## CONCLUSION

For the reasons discussed above, Claimant's Memorandum In Support of Summary Remand [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 25] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 27, 2023